UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | CRIMINAL NO. |
| vs. | § § § | 18 U.S.C. § 371<br>18 U.S.C. § 1347 |
| MAYNARD FREEMAN<br>AMUDAT T. WILLIAMS<br>MARIAM M. LANDRY<br>SUNDAY ADEBISI | § § § § § | |
| Defendants | | |

*United States District Court*
*Southern District of Texas*
*FILED*

MAR 2 0 2008

Michael N. Milby
Clerk of Court

H 08 0144

Sealed
Public and unofficial staff access
to this instrument are
prohibited by court order.

UNSEALED
PER ARREST
4/23/08

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT ONE**
**(Conspiracy - 18 U.S.C. 371)**

**A. INTRODUCTION**

At all times material to this indictment:

**THE MEDICARE PROGRAM**

1.   The Medicare Program ("Medicare") was a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind, and disabled. Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health and Human Services, which was formerly known as the Health Care Financing Administration ("HCFA").

2.   Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

1

3.  Medicare Part B paid for certain physician services, outpatient services, and other services, including durable medical equipment ("DME") that were medically necessary and were ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose, such as an electric or motorized wheelchair, also known as a "power wheelchair."

4.  HHS through CMS, contracted with TrailBlazer Health Enterprises, LLC located in Dallas, Texas to process claims submitted by physicians and other health care providers. Individuals who receive benefits under Medicare were often referred to as Medicare "beneficiaries."

### DME Suppliers and Medicare Billing Procedures

5.  In order to bill Medicare for DME equipment, a DME supplier had to be an approved Medicare supplier. The DME supplier obtained this approval by submitting an application to the National Supplier Clearinghouse ("NSC"), an entity that contracted with CMS to process enrollment applications. If the supplier met certain minimum qualifications, NSC approved the application. The DME supplier was issued a unique identification number called a "supplier number." The DME supplier was then able to submit bills, known as "claims," for payment to Medicare for the cost of equipment supplied to beneficiaries.

6.  Medicare permitted approved DME suppliers to submit Medicare claims on paper or electronically. Medicare required that claims contain the following: the beneficiary's name and Medicare identification number; the name and unique provider identification number of the doctor who ordered the item or service; the item or service that was provided by the supplier; the date of service; and the charge for the item or service.

7. In Texas, Medicare Part B was administered by Palmetto Government Benefits Administrators, which had entered into a contract with the United States Department of Health and Human Services and CMS to serve as the entity or "carrier" that received, processed, and paid Medicare claims submitted by DME suppliers, including those relating to power wheelchairs.

### Power Wheelchairs and Certificates of Medical Necessity ("CMN")

8. Under Medicare rules, Medicare Part B would pay for the cost of a power wheelchair and accessories supplied to a beneficiary when the beneficiary had a serious, long-term medical or physical condition; required and used a wheelchair to move around the residence; a power wheelchair was medically necessary for the beneficiary; the beneficiary could not operate a manual (non-motorized) wheelchair; and the beneficiary was capable of safely operating the controls for a power wheelchair. Medicare rules required that a beneficiary exhibit severe weakness of the upper extremities and be unable to walk over long periods of time in order to be eligible to receive a power wheelchair. Medicare required the treating physician document the ambulatory status of a patient and the medical condition causing the patient's impairment. The physician's notes needed to indicate where the equipment would be used.

9. Medicare required the supplier to obtain documentation that the wheelchair was medically necessary in order for a DME supplier to be paid for providing a power wheelchair and accessories to a beneficiary. A specific document, called the HCFA Form 843, was required to establish medical necessity. In the HCFA Form 843, also known as a Certificate of Medical Necessity ("CMN"), the Medicare beneficiary's treating doctor was required to set forth the medical necessity for the power wheelchair Among other matters, the doctor was required to

certify that the beneficiary had severe weakness of the upper extremities due to a neurological, muscular, or cardiopulmonary disease or condition, and that the beneficiary was unable to operate any type of manual wheelchair. The doctor was also required to sign the CMN after attesting that he or she was the beneficiary's treating physician and the medical necessity information was true, accurate, and complete.

10. The CMN included a section that described the power wheelchair and accessories that were ordered by the beneficiary's treating physician and contained the DME supplier's charge for these items. This section of the CMN formed the basis for the bill that the DME supplier would send to Medicare in order to be paid for the cost of providing the power wheelchair and accessories.

11. A DME supplier who billed Medicare for the cost of a power wheelchair and accessories was required to submit the completed and signed CMN. If the claim was submitted electronically, then all of the information from the CMN was required to be submitted electronically.

## THE DEFENDANTS AND ASSOCIATES

12. MAYNARD FREEMAN, a defendant herein, resided in Houston, Texas and was a medical doctor licensed by the State of Texas to practice medicine. From approximately November 2002 through December 2003, MAYNARD FREEMAN contracted through Prime Staff Advanced Medical Division, a medical staffing company, and provided medical services to patients of several different medical clinics including a clinic named DOMINION TREATMENT & REHAB. CENTER, which operated at 414 N. Sam Houston Pkwy E., Suite A, Houston, Texas.

13. AMUDAT T. WILLIAMS, defendant herein, resided in Houston, Texas and was the owner of ALPHA MEDICAL & SAFETY SUPPLY, INC., which provided durable medical equipment and supplies. WILLIAMS is married to SUNDAY ADEBISI and is the mother of MARIAM LANDRY.

14. MARIAM M. LANDRY and SUNDAY ADEBISI, defendants herein, resided in Houston, Texas and were the owners of DA-FEM MEDICAL SUPPLY, INC. MARIAM M. LANDRY was also the owner of DOMINION TREATMENT & REHAB CENTER.

## DME COMPANIES

15. ALPHA MEDICAL & SAFETY SUPPLY INC., located at 505 N. Sam Houston Parkway E., Suite 303, Houston, Texas, was a DME supply company that was owned and operated by AMUDAT T. WILLIAMS. ALPHA MEDICAL & SAFETY MEDICAL SUPPLY, INC. was established as a DME supplier on or about August 2002, with an emphasis on supplying power wheelchairs. ALPHA MEDICAL & SAFETY SUPPLY, INC., was located in Houston, Texas, where it remained until their provider number was deactivated on June 6, 2003.

16. From the time period of December 2002 and continuing through May 2003, ALPHA MEDICAL & SAFETY MEDICAL SUPPLY, INC., billed Medicare more than $2.1 million and was paid in excess of $1.1 million for DME where MAYNARD FREEMAN was listed as the referring/authorizing physician.

17. DA-FEM MEDICAL SUPPLY, INC., located at 9888 Bissonnet Street, Suite 440, Houston, Texas, was a DME supply company that was owned and operated by MARIAM M. LANDRY and SUNDAY ADEBISI. DA-FEM MEDICAL SUPPLY, INC. was established on or about July 1, 2002 as a DME supplier, with an emphasis on supplying power wheelchairs.

DA-FEM MEDICAL SUPPLY, INC., INC. was located in Houston, Texas, where it remained until their provider number was deactivated in June 6, 2003.

18. From the time period of November 2002 and continuing through May 2003, DA-FEM MEDICAL SUPPLY, INC., billed Medicare more than $1.9 million and was paid in excess of $1.2 million for DME where MAYNARD FREEMAN was listed as the referring/authorizing physician.

19. From on or about July 2002 and continuing through June 2003, MAYNARD FREEMAN, as the referring/authorizing physician for DME companies that provided motorized wheelchairs, caused to be billed to Medicare more than $11.2 million of which approximately $5.8 million was paid for motorized wheelchairs claimed to have been medically necessary for the health and well being of Medicare beneficiaries. These claims were false, fraudulent and fictitious.

### B. THE CONSPIRACY

20. Beginning in or about July 2002, the exact time being known to the Grand Jury and continuing thereafter to in or about June 2003, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

**MAYNARD FREEMAN**
**AMUDAT T. WILLIAMS**
**MARIAM M. LANDRY**
**and**
**SUNDAY ADEBISI**

did knowingly, intentionally, and willfully combine, conspire, confederate and agree with each other and other persons known and unknown to the Grand Jury to commit and aid and abet the commission of certain offenses against the United States:

6

a. To violate the Health Care Fraud statute, that is, to knowingly and willfully execute and attempt to execute, a scheme and artifice: (1) to defraud a health care benefit program; namely the Medicare program; and (2) to obtain, by means of material false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program, namely, Medicare; in connection with the delivery of or payment for health care benefits, items and services, namely power wheelchairs in violation of Title 18, United States Code Section 1347;

b. To violate the Anti-Kickback statute by knowingly and willfully soliciting and receiving any remuneration (including any kickback) directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of Title 42 U.S.C. 1320a - 7b(b)(1)(A);

c. To violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration (including any kickback) directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of Title 42 U.S.C. 1320a-7b(b)(2)(A);

## C. OBJECT OF THE CONSPIRACY

21. It was the object of the conspiracy concerning power wheelchair claims for the defendants to unlawfully enrich themselves by falsely and fraudulently representing that Medicare beneficiaries':

    a. conditions were such that without the use of a power wheelchair, the beneficiaries would otherwise be bed or wheelchair confined;

    b. conditions were such that a power wheelchair was medically necessary and the beneficiaries were unable to operate a manual wheelchair; and

    c. the beneficiaries suffered from severe weakness of the upper extremity due to a neurological or muscular/disease condition

when in fact the defendants well knew the beneficiaries did not suffer from such conditions and did not qualify to receive a power wheelchair under the Medicare rules.

## D. MANNER AND MEANS

The manner and means of the conspiracy included, but were not limited to, the following:

22. Defendant MAYNARD FREEMAN would and did cause Medicare to be billed for evaluations and DME related products provided to Medicare beneficiaries, as if they were required because:

    a. the beneficiaries' medical condition were such that without the use of power wheelchair, the beneficiaries would otherwise be confined to a bed or chair;

    b. the beneficiaries' medical condition rendered them incapable of operating a manual wheelchair; and

    c. the beneficiaries suffered from a neurological or muscular disease/condition that resulted in severe weakness of the upper extremities.

23. Defendant MAYNARD FREEMAN would and did perform said evaluations at DOMINION TREATMENT & REHAB. CENTER, owned by MARIAM M. LANDRY, and located in Houston, Texas for the sole purpose of evaluating Medicare beneficiaries to qualify them to receive power wheelchairs.

24. Defendant MAYNARD FREEMAN would and did approve and authorize Medicare beneficiaries to receive power wheelchairs when in fact the defendant well knew they did not qualify for such equipment.

25. Defendant MAYNARD FREEMAN would and did receive kickbacks from SUNDAY ADEBISI of DA-FEM MEDICAL SUPPLY, INC.

26. Defendants AMUDAT T. WILLIAMS and SUNDAY ADEBISI would and did pay kickback payments to individuals for soliciting Medicare beneficiaries who were approved by defendant MAYNARD FREEMAN to receive power wheelchairs.

27. Defendants AMUDAT T. WILLIAMS, MARIAM M. LANDRY, and SUNDAY ADEBISI would and did routinely cause bills to be submitted to Medicare for providing power wheelchairs to Medicare beneficiaries when in fact, the defendants had actually provided a less expensive item known as a scooter and, in some instances, no equipment or items at all.

28. Defendants AMUDAT T. WILIAMS and SUNDAY ADEBISI would and did direct the delivery of scooters to Medicare beneficiaries when in fact claims were submitted for power wheelchairs.

### E. OVERT ACTS

29. In furtherance of the conspiracy and to affect the objects thereof, the following Overt Acts, among others, were committed in the Southern District of Texas,

(1)     On or about September 9, 1991, defendant MAYNARD FREEMAN became an approved Medicare provider.

(2)     On or about October 17, 2002, AMUDAT T. WILLIAMS, as the Chief Executive Officer, signed a Medicare application to enroll ALPHA MEDICAL & SAFETY SUPPLY, INC. as a durable medical equipment supplier.

(3)     On or about August 30, 2002, MARIAM M. LANDRY, as the Chief Executive Officer, signed a Medicare application to enroll DA-FEM MEDICAL SUPPLY, INC. as a durable medical equipment supplier. The application listed SUNDAY ADEBISI as the first contact name and provided his phone number.

(4)     On or about February 19, 2003, defendant MAYNARD FREEMAN performed an evaluation of a Medicare beneficiary for the purpose of being approved for a power wheelchair.

(5)     On or about February 19, 2003, defendant MAYNARD FREEMAN signed a CMN approving a Medicare beneficiary to receive a power wheelchair and accessories when the defendant well knew the beneficiary did not qualify for such equipment under Medicare rules.

(6)     On or about February 19, 2003, defendant SUNDAY ADEBISI directed the delivery of a scooter to a Medicare beneficiary when in fact claims were submitted for a power wheelchair and accessories.

(7)     On or about February 19, 2003, defendants SUNDAY ADEBISI and MARIAM LANDRY caused to be submitted claims to Medicare for a power wheelchair and accessories as a result of a referral of a patient for medical services that were not medically necessary. In addition, the claim was submitted prior to any equipment being provided.

(8)   On or about March 25, 2003, defendant MAYNARD FREEMAN performed an evaluation of a Medicare beneficiary for the purpose of being approved for a power wheelchair.

(9)   On or about March 25, 2003, defendant MAYNARD FREEMAN signed a CMN approving a Medicare beneficiary to receive a power wheelchair and accessories when the defendant well knew the beneficiary did not qualify for such equipment under Medicare rules.

(10)   On or about March 25, 2003, defendant SUNDAY ADEBISI directed the delivery of a scooter to a Medicare beneficiary when in fact claims were submitted for a power wheelchair and accessories.

(11)   On or about March 25, 2003, defendants SUNDAY ADEBISI and MARIAM LANDRY caused to be submitted claims to Medicare for a power wheelchair and accessories as a result of a referral of a patient for medical services that were not medically necessary. In addition, the claim was submitted prior to any equipment being provided.

(12)   On or about April 21, 2003, defendant MAYNARD FREEMAN performed an evaluation of a Medicare beneficiary for the purpose of being approved for a power wheelchair.

(13)   On or about April 21, 2003, defendant MAYNARD FREEMAN signed a CMN approving a Medicare beneficiary to receive a power wheelchair and accessories when the defendant well knew the beneficiary did not qualify for such equipment under Medicare rules.

(14)   On or about April 21, 2003, defendant AMUDAT T. WILLIAMS directed the delivery of a scooter to a Medicare beneficiary when in fact claims were submitted for a power wheelchair and accessories.

(15)   On or about April 21, 2003, defendant AMUDAT T. WILLIAMS caused to be submitted a claim to Medicare for a power wheelchair and accessories as a result of a referral of

a patient for medical services that were not medically necessary. In addition, the claim was submitted prior to any equipment being provided.

(16)   On or about May 6, 2003, defendant MAYNARD FREEMAN performed an evaluation of a Medicare beneficiary for the purpose of being approved for a power wheelchair.

(17)   On or about May 6, 2003, defendant MAYNARD FREEMAN signed a CMN approving a Medicare beneficiary to receive a power wheelchair and accessories when the defendant well knew the beneficiary did not qualify for such equipment under Medicare rules.

(18)   On or about May 6, 2003, defendants SUNDAY ADEBISI directed the delivery of a scooter to a Medicare beneficiary when in fact claims were submitted for a power wheelchair and accessories.

(19)   On or about May 6, 2003, defendant SUNDAY ADEBISI and MARIAM LANDRY caused to be submitted claims to Medicare for a power wheelchair and accessories as a result of a referral of a patient for medical services that were not medically necessary. In addition, the claim was submitted prior to any equipment being provided.

**In violation of Title 18, United States Code, Section 371.**

### COUNTS TWO THROUGH THIRTEEN

**(Health Care Fraud-Durable Medical Equipment)**
**18 U.S.C. 1347**

1.   The Grand Jury re-alleges paragraphs 1 through 19 and 22 through 29 of Count One above and incorporates them as if alleged herein.

2.   Beginning on or about November 2002, defendants identified herein, billed Medicare for services provided to Medicare beneficiaries who were unlawfully referred to a

12

health care provider for the purpose of authorizing and approving beneficiaries to receive a power wheelchair when they did not qualify under Medicare guidelines. As a result of this unlawful scheme, Medicare was billed in excess of $11.1 million and paid in excess of $5.8 million.

### Purpose of the Scheme to Defraud

3. It was the purpose of the scheme to defraud and fraudulently obtain money from the Medicare program by billing for evaluations and providing DME, namely power wheelchairs and accessories as if the were required because:

   a) the beneficiaries' medical condition were such that without the use of power wheelchair, the beneficiaries would otherwise be confined to a bed or chair;

   b) the beneficiaries' medical condition rendered them incapable of operating a manual wheelchair; and

   c) the beneficiaries' suffered from a neurological muscular disease/condition that resulted in severe weakness of the upper extremities.

### Scheme to Defraud

4. It was a part of the scheme and artifice to defraud that the defendants would and did submit and cause to be submitted claims to the Medicare programs which were false or fraudulent in numerous ways including the following:

   a) the beneficiaries' medical condition were such that without the use of power wheelchair, the beneficiaries would otherwise be confined to a bed or chair;

   b) the beneficiaries' medical condition rendered them incapable of operating a manual wheelchair; and

    c)    the beneficiaries' suffered from a neurological muscular disease/condition that resulted in severe weakness of the upper extremities.

### Health Care Fraud

5.    Beginning in or about November 2002, and continuing thereafter to in or about June 2003, in the Houston Division of the Southern District of Texas, The defendants

**MAYNARD FREEMAN**
**AMUDAT T. WILLIAMS**
**MARIAM M. LANDRY**
and
**SUNDAY ADEBISI**

identified in the specific counts below, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program and to obtain by means of material, false and fraudulent pretenses, representations, and promises, of the money and property owned by, and under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, to wit; on or about the below listed dates, the defendants caused to be submitted false and fraudulent claims to Medicare for services in connection with the authorization and approval of beneficiaries to receive a power wheelchair in the amount indicated below:

| Count | Patient Name HIC# | Medicare Claim # | Date of Service | HCPCS | Billed Amount |
|---|---|---|---|---|---|
| 2 | Parker, B (**2482A) | 103083924295000 | 03/21/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 3 | Berry, J (**3530A) | 103090935922000 | 03/25/03 | K0011 | $5,500.00 |
|   |   |   |   | K0085 | $360.00 |

|   |   |   |   | E0178 | $200.00 |
|---|---|---|---|---|---|
|   |   |   |   | K0031 | $60.00 |
| 4 | Watson, R (**2805A) | 103092870959000 | 03/28/03 | K0011 | $5,500.00 |
|   |   |   |   | K0085 | $360.00 |
|   |   |   |   | E0192 | $461.43 |
|   |   |   |   | K0031 | $60.00 |
| 5 | Jones, M (**0903A) | 103098886085000 | 04/02/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 6 | Davis Jr., R (**8911A) | 103106752247000 | 04/11/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 7 | Singletary, M(**6331A) | 103115885361000 | 04/21/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 8 | Beck, E (**1784A) | 103125915907000 | 04/30/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 9 | Holden, E (**1850D) | 103125915911000 | 05/01/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 10 | Dequir, A (**6957A) | 103133897112000 | 05/06/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |
| 11 | Thorton, S (**6354A) | 103132911136000 | 05/06/03 | K0011 | $7,500.00 |
|   |   |   |   | K0085 | $300.00 |
|   |   |   |   | E0178 | $605.00 |
|   |   |   |   | K0031 | $46.16 |

| | | | | | |
|---|---|---|---|---|---|
| 12 | Jones, E (**6882A) | 103098886084000 | 04/02/03 | K0011<br>K0085<br>E0178<br>K0031 | $7,500.00<br>$300.00<br>$605.00<br>$46.16 |
| 13 | Spiller, O (**6268D6) | 103142883808000 | 05/15/03 | K0011<br>K0085<br>E0178<br>K0031 | $7,500.00<br>$300.00<br>$605.00<br>$46.16 |

**In violation of Title 18 United States Code, Sections 1347 and 2.**

**NOTICE OF CRIMINAL FORFEITURE**
**(18 U.S.C. 982 (a)(7))**

Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the commission of a violation of the offenses charged in Counts One through Thirteen of the Indictment, notice is given that the following defendants:

MAYNARD FREEMAN
AMUDAT T. WILLIAMS
MARIAM M. LANDRY
and
SUNDAY ADEBISI

shall forfeit all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offenses, including, but not limited to, a money judgment in the amount of approximately $11,000,000.00.

In the event that the property which is subject to forfeiture to the United States, as a result of any act or omission of a defendant:

    (a)    cannot be located upon exercise of due diligence;

    (b)    has been placed beyond the jurisdiction of the Court;

(c) has been transferred or sold to, or deposited with a third party;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to see forfeiture of any other property of the defendant up to the value of such property, pursuant to Title 21 United States Code, Section 853(p), made applicable to these offenses by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

Original Signature on File

DONALD J. DeGABRIELLE, JR.
UNITED STATES ATTORNEY

By: _____
SAMUEL J. LOUIS
ASSISTANT UNITED STATES ATTORNEY
(713)567-9737

17